UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Three African American Males,

Plaintiffs,

v.

Wal-Mart Stores, Inc.,

Defendant.

Civil File No.: 01-1814 (ADM/AJB)

**DEFENDANT WAL-MART STORES, INC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR AN ORDER AMENDING THE CASE CAPTION**

---

## INTRODUCTION

Wal-Mart Stores, Inc. (hereinafter "Wal-Mart") respectfully moves this Court pursuant to Rules 10(a) and 17(a) of the Federal Rules of Civil Procedure, for an Order amending the caption in this matter to identify the plaintiffs by name.

## FACTS

During the early morning hours of March 27, 2000, between 1:30 and 1:50 a.m., Marshall Nelson (hereinafter "Nelson"), Lamar Phillips (hereinafter "Phillips"), and Ronald Garrison (hereinafter "Garrison"), the "Three African American Males" who are the plaintiffs in the above-captioned matter, went to shop at the Wal-Mart store in Fridley, Minnesota. Joint Rule 26(f) Report, attached as Exhibit A to the Affidavit of Chris Angell. At the time, all of the check-out lines were temporarily closed as the cashiers did their nightly counting of the registers. *Id.*

Wal-Mart associates believed the plaintiffs appeared to be watching and following the cashiers. *Id.* One of the plaintiffs followed an associate from register to register, and up to the service desk. *Id.* The plaintiffs were also making inappropriate comments to the associates. *Id.* One of the associates believed that one of the plaintiffs was carrying a gun. *Id.* Consequently, a Wal-Mart employee called the police requesting a walk through the store. *Id.*

When a cashier opened, the plaintiffs paid for their purchases and attempted to leave the premises. *Id.* Outside the doors they were met by police with weapons drawn. *Id.* The plaintiffs were handcuffed, frisked, and questioned by the police. *Id.* The police determined that none of the plaintiffs were armed and that they had paid for the merchandise. *Id.*

As the plaintiffs were preparing to leave the premises, a Wal-Mart employee discovered that the plaintiffs had, in fact, not paid for two items. *Id.* When the unpurchased items were pointed out to the plaintiffs, they went back into the store, paid for the two items, and left. *Id.*

On or about October 3, 2001, the plaintiffs served the Complaint that initiated the above-captioned matter upon Wal-Mart. Complaint, attached as Exhibit B to the Affidavit of Chris Angell. The Complaint asserts a right to recover damages on a variety of theories, including civil rights violations (federal and state), defamation, false imprisonment, infliction

of emotional distress (negligent and intentional), and negligence. *Id*. Rather than identifying the plaintiffs as Nelson, Phillips, and Garrison, however, the Complaint identifies the plaintiffs as "Three African American Males." *Id*.

On or about July 13, 2004, counsel for Wal-Mart spoke with the plaintiffs' attorney over the telephone and requested that the plaintiffs voluntarily amend the case caption to specifically identify Nelson, Phillips, and Garrison by name. Affidavit of Chris Angell. Without providing a reason, the plaintiffs' lawyer refused this request and informed defense counsel that Wal-Mart would have to bring a motion to amend the case caption. *Id*.

## ARGUMENT

### A. USE OF A PSEUDONYM IS ALLOWED ONLY IN CASES WHERE SPECIFIC FACTORS ARE PRESENT.

Every pleading shall contain a caption setting forth the name of the court, the title of the action, the file number, and a designation as in Rule 7(a). In the complaint the title of the action shall include the names of all the parties . . .. FED. R. CIV. P. 10(a). There is a strong presumption against allowing parties to use a pseudonym in the complaint, as there is a First Amendment interest in public proceedings, and identifying parties to an action is an important part of making it truly public. *Luckett v. Beaudette*, 21 F.Supp. 2d 1029, 1029 (D.Minn. 1998). A trial is a public event. *Id*. What transpires in the court room is public property. *Id*. When a party invokes the judicial powers of the United States, she invites public scrutiny of the dispute and the proceeding. *Id.* The people have a right to know who

is using their courts. *Id.*

There are a small number of court-created exceptions in which parties are allowed anonymity. *Id.* Case law identifies three factors which, if present, might support anonymity: (1) plaintiffs seeking anonymity were suing to challenge governmental activity; (2) prosecution of the suit compelled plaintiffs to disclose information of the utmost intimacy; and (3) plaintiffs were compelled to admit their intention to engage in illegal conduct, thereby risking criminal prosecution. *Id.* Additionally, some courts have permitted use of a pseudonym where the privacy interests of children were at stake. *See, e.g., Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981).

**1. WAL-MART IS NOT A GOVERNMENTAL ENTITY.**

Wal-Mart is a not a governmental entity. Plaintiffs acknowledge that Wal-Mart is a private business, incorporated under the laws of the State of Delaware with its home office in Bentonville, Arkansas. Complaint.

**2. PROSECUTION OF THIS SUIT WILL NOT COMPEL PLAINTIFF TO DISCLOSE INFORMATION OF THE UTMOST PRIVACY.**

The second factor is the only one that even arguably supports permitting the plaintiffs to use a collective pseudonym in this case. This Court had the opportunity to discuss application of this factor in *Luckett*. *Luckett* involved a sexual discrimination and

coercion lawsuit brought by a woman with children against her former landlord. *Luckett*, 21 F.Supp.2d at 1029-30. Luckett sought to proceed under a pseudonym due to her concern about embarrassment for her and her children. *Id*.

In *Luckett*, this Court held that the sexual discrimination and coercion issues raised therein were not of the utmost intimacy, holding, "Though discussing discrimination is undoubtedly uncomfortable, it is not such an invasion of privacy as to justify reducing the normal publicity of judicial proceedings. Such cases are relatively frequent. They are simply not comparable to litigating highly-charged subjects such as abortion or artificial insemination--cases in which anonymity has sometimes been allowed. Even sexual discrimination, which arguably implicates more private concerns than some lawsuits, cannot itself justify anonymity." *Id*.

Wal-Mart submits that if a woman's allegations of sexual improprieties by her former landlord do not implicate issues of utmost privacy, then certainly this case does not either. Here, all of the underlying conduct occurred in a public place and was observed by numerous individuals. Moreover, the day after this lawsuit was commenced, the subject matter of this litigation was reported in the *Minneapolis Star Tribune*. Article from *Minneapolis Star Tribune* dated October 4, 2001, attached as Exhibit C to the Affidavit of Chris Angell. The day after that, the story was featured on KSTP-TV. Transcript of KSTP-TV news cast aired on October 5, 2001, attached as Exhibit D to the Affidavit of Chris Angell.

**3. PLAINTIFFS INSIST THAT THEY HAD NO INTENTION TO ENGAGE IN ILLEGAL CONDUCT.**

Prosecution of the above-captioned matter will not require the plaintiffs to admit to any criminal wrongdoing. On the contrary, the very essence of the plaintiffs' claims is that they committed no crime, but were treated as if they had merely because they are black. Joint Rule 26(f) Report; Complaint.

**4. THIS CASE DOES NOT IMPLICATE THE PRIVACY INTERESTS OF CHILDREN.**

On March 27, 2000, Nelson, Phillips, and Garrison were 23, 20, and 24 years old respectively. Complaint. The claims they have asserted in this litigation are based upon purported discrimination against only themselves. *Id*. The plaintiffs have not asserted any claims on behalf of or to protect any identifiable child. Accordingly, this case does not implicate the privacy interests of children.

**B. TO PERMIT THE PLAINTIFFS TO PROCEED UNDER A PSEUDONYM IS FUNDAMENTALLY UNFAIR TO WAL-MART.**

Courts have recognized that allowing a plaintiff to proceed anonymously against a named defendant is fundamentally unfair. In *Doe v. Indiana Black Expo, Inc.*, 923 F.Supp. 137, 141 (S.D.Ind.1996), an employment discrimination case in which Plaintiff sought to use a pseudonym to protect disclosure of his history of substance abuse and mental health issues, the United States Court for the Southern District of Indiana characterized the

unfairness this way: "(Plaintiff's) claims directly accuse the defendants of several forms of serious and deliberate wrongdoing. He attacks the defendants' integrity and reputations. Basic fairness requires that where a plaintiff makes such accusations publicly, he should stand behind those accusations, and the defendants should be able to defend themselves publicly. . . . The plaintiff has raised claims in which the parties' testimony is virtually certain to be at odds on material matters, so that their credibility will be directly at issue. The defendants in such a case have a powerful interest in being able to respond publicly to defend their reputations, not only in court but also in other situations where the claims in the lawsuit may be of interest to those with whom the defendants have business or other dealings. Part of that defense will ordinarily include direct challenges to the plaintiff's credibility . . .. (Plaintiff) cannot use his privacy interests as a shelter from which he can safely hurl these accusations without subjecting himself to public scrutiny." *Id.* at 141-42.

Additionally, *Indiana Black Expo, Inc.* detailed the effect these types of claims can have upon a defendant "the mere filing of a civil lawsuit can have significant effects on a defendant. The public charges made in a civil lawsuit can cast a shadow over a defendant's reputation until the case is resolved. The effects can be felt with lenders or employers, both actual and prospective. With defendants like the Black Expo, the effects could extend to prospective donors and sponsors, and to other persons or institutions invited to associate themselves publicly with the organization. A civil lawsuit can also lead to adverse publicity and can require defendants to disclose publicly certain information that they might prefer to keep private. But only rarely can a defendant in a lawsuit remain anonymous, and certainly not where the plaintiff has chosen to file publicly a complaint

naming the defendants but using a false name for himself." *Id*. at 141.

Like *Indiana Black Expo, Inc.*, the above-captioned matter involves very serious claims against a high profile defendant. The claims strike at the very heart of Wal-Mart's integrity and reputation and have already resulted in adverse publicity for Wal-Mart. Accordingly, to allow the plaintiffs to continue to hurl these accusations against Wal-Mart without subjecting themselves to public scrutiny is fundamentally unfair.

**CONCLUSION**

For all of the foregoing reasons, Wal-Mart Stores, Inc. asks this Court to Order that the caption in this matter be amended to specifically identify Nelson, Phillips, and Garrison as the plaintiffs.

MURNANE, CONLIN, WHITE & BRANDT
PROFESSIONAL ASSOCIATION

Date: July 16, 2004

s/Chris Angell
Andrew T. Shern, #100316
Chris Angell #319624
Attorneys for Wal-Mart Stores, Inc.
444 Cedar Street, Suite 1800
St. Paul, MN 55101
(651) 227-9411

612734