# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Three African American Males,

Plaintiffs,

v.

Wal-Mart Stores, Inc.,

Defendant.

Civil File No.: 01-1814 (ADM/AJB)

**JOINT RULE 26(f) REPORT**

The counsel identified below participated in the meeting required by Fed.R.Civ.P. 26(f), on July 18, 2003, and prepared the following report:

The pretrial conference in this matter is scheduled for July 22, 2003, at 10:00 a.m. before the United States Magistrate Judge Arthur J. Boylan in St. Paul, Minnesota.

**1. Date and place of the meeting and the identification of the parties and their attorneys.**

**(a) The date and place at which the meeting took place.**

July 18, 2003, at the office of Murnane, Conlin, White & Brandt, 444 Cedar Street, Suite 1800, St. Paul, Minnesota, 55101.

**(b) Name, address and occupation or business of each party, together with the name, address and telephone number of the attorneys who represented each party at the meeting.**

Plaintiffs: Three African American Males (Marshall Nelson, Lamar Phillips and Ronald Garrison

Represented by Aldo J. Terrazas
E-1000, First National Bank Building
332 Minnesota Street
St. Paul, MN 55101
(651) 227-9990

Defendant Wal-Mart Stores, Inc.

Represented by Andrew T. Shern
Murnane, Conlin, White & Brandt
444 Cedar Street, Suite 1800
St. Paul, MN 55101
(651) 227-9411

**2. Description of the case.**

**(a) Jurisdictional basis of the case:**

The Court has subject matter jurisdiction to adjudicate this action under 28 U.S.C. § 1332, and 42 U.S.C. § 1981.

**(b) A brief narrative of the facts giving rise to the lawsuit, including a description of legal claims and defenses.**

Plaintiff's Claims. Plaintiffs went to shop at defendant's store on or about March 27, 2000; after selecting merchandise they waited for cashiers to open. The cashiers were temporarily closed. When a cashier opened, plaintiffs paid for their purchases and attempted to leave the premises. Outside the doors they were met by police with weapons drawn; they were handcuffed, frisked and questioned by the police. Defendant's employees had called 911 reporting that plaintiffs were hanging around suspiciously near the cash registers. No mention was made of the fact that registers were closed and plaintiffs were waiting. Defendant's employees also reported to 911 that one of the plaintiffs may have a gun. Police determined that neither plaintiff was armed and that they had paid for the merchandise. As plaintiffs were ready to leave a Wal-Mart employee accused them of not paying for two items. Plaintiffs had purchases over $300 worth of items. They went back into the store paid for the 2 items and left. Plaintiffs were profiled as possible robbers based solely on their race. They have claims for race discrimination, defamation, negligence and other torts.

Defendant Wal-Mart's Claims/Defenses. During the early morning hours of March 27, 2000, between 1:30 and 1:50 a.m. defendant's store associates did observe three males who appeared to be together and who were watching and following the cashiers as they did their nightly counting of the registers. One of the males, who was wearing a red shirt, followed an associate from register to register, and up to the service desk. These males were also making inappropriate comments to store associates. Defendant did call the police requesting a walk through the store. Plaintiffs did pay for

some, but not all of the items which were in their possession when they left the store. When the un-purchased items were pointed out to them they returned to the store and paid for those items.

(c) **A summary itemization of the dollar amount of each element of the alleged damages.**

Plaintiffs' damages are based on the insulting and degrading humiliation perpetrated against them based on their race and the lifetime scar this racial based event has left on them.

3. **Pleadings.**

(a) **Statement of whether all process has been served, all pleadings filed and any plan for any party to amend pleadings or add additional parties to the action.**

All pleadings have been served and filed. Plaintiffs may be required to move the court to amend the Complaint to add punitive damages under certain state causes of action.

(b) **Proposed date by which all hearings on motions to amend and/or add parties to the action shall be heard.**

If amendments become necessary, the parties propose that hearings on motions to amend be heard by September 22, 2003.

(c) **Statement of whether jury trial has been timely demanded by any party.**

A jury trial is available under the law and has been demanded by both parties.

4. **Discovery Plan.**

(a) **Date by which initial Rule 26(a)(1) disclosure of witnesses, documents, itemized damage computations and insurance will be completed (if not already completed).**

August 8, 2003.

(b) **Whether the parties wish to engage in any method of alternative dispute resolution following Rule 26(a)(1) disclosures but before formal discovery is commenced.**

The parties are willing to engage in alternative dispute resolution and recommend that mediation be conducted by the magistrate prior to commencement of formal discovery, subject to the magistrate's schedule.

**(c) Whether discovery should be conducted in phases, or limited or focused upon, particular issues.**

Not necessary.

**(d) The date by which each party shall disclose the identity of expert witnesses and their reports under Rule 26(a)(2)(A) and (B);**

The parties agree to identify experts and provide reports within 60 days following the close of factual discovery, as identified in answer to number 5 below.

**(e) The number of interrogatories each party shall be permitted to serve;**

The parties agree to limit the number of interrogatories permitted by each party to 50.

**(f) The number of depositions (excluding depositions of expert witnesses) each party shall be permitted to take;**

10-15.

**(g) The number of expert depositions each party shall be permitted to take.**

Plaintiffs anticipate that they may call one expert witness. Defendant anticipates that it may call four or five expert witnesses.

**5. Close of Discovery and Non-Dispositive Motions**

**The date by which all discovery shall be completed and all non-dispositive motions shall be served and filed.**

November 11, 2003.

**6. Dispositive Motions and Trial**

**(a) Date by which all dispositive motions shall be served, filed and heard by the Court;**

December 9, 2003.

**(b) Date by which case will be ready for trial;**

March 9, 2004.

**(c) The number of expert witnesses each party expects to call at trial;**

Plaintiffs anticipate calling at most one expert. Defendant anticipates calling four to five expert witnesses.

**(d) Estimated trial time (including jury selection and instructions, if applicable).**

Two days.

**Unless otherwise agreed by counsel, the initial disclosures under Rule 26(a)(1) shall also be exchanged no later than July 16, 2003.**

The parties have agreed that the disclosure will occur by August 8, 2003.

Date: _______________, 2003

_______________________________
Aldo J. Terrazas, #190524
Attorney for Plaintiff
E-1000, First National Bank Building
332 Minnesota Street
St. Paul, MN 55101
(651) 227-9990

MURNANE, CONLIN, WHITE & BRANDT
PROFESSIONAL ASSOCIATION

Date: July 21, 2003

[signature] for (292047)
Andrew T. Shern, #100316
Attorney for Wal-Mart Stores, Inc.
444 Cedar Street, Suite 1800
St. Paul, MN 55101
(651) 227-9411

561035

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil Action, File Number ____________

Three African American Males,

Plaintiffs,

v. **COMPLAINT**

Wal-Mart Stores, Inc.

Defendants.

## PREAMBLE

Three black males in their twenties went to shop at Wal-Mart and while they waited to pay, unbeknownst to them, they were being carefully scrutinized by Wal-Mart personnel who had decided to become suspicious of them because they are black. The suspicion fueled by racism turned the three black men's every act into the suspected moves of robbers casing a joint and even ignited the belief that one of them had a non-existing gun. After the three black men paid for their purchases they were met outside by several police officers with guns drawn, bright lights and loud commands to get down to the ground. To the stunning disbelief of the three black men, Wal-Mart had called 911 and reported them as suspicious and possibly armed. The three black men are the plaintiffs here and this is their lawsuit against Wal-Mart.

## JURISDICTION

Jurisdiction is founded on the existence of a Federal question. The action arises under 42 U.S.C. §§ 1981 as amended by the Civil Rights Act of 1991. Jurisdiction is also founded on diversity of citizenship and amount. Plaintiffs are citizens of the State

of Minnesota and defendant Wal-Mart is a Delaware corporation with its principal place of business and home office located in Bentonville, Arkansas. The matter in controversy exceeds, exclusive of interest and costs, the sum of fifty thousand dollars. This court has pendent jurisdiction over any and all State claims asserted herein.

## FACTS

1. Plaintiff's are African American adult males identified as Marshall Nelson, Lamar Phillips and Ronald Garrison. At the time of the incident giving rise to this lawsuit they were 23, 20 and 24 years old respectively.

2. On or about March 27, 2000, at approximately 1:00 a.m. the three plaintiffs went to a Wal-Mart store located at 8450 University Avenue in Fridley, Minnesota, to make purchases. The store is open 24 hours a day.

3. While they shopped they heard an announcement over the store's intercom that the cashier's would be closed for a short time. After they completed their purchases they waited for a cash register to open so they could pay for them.

4. During the time they were waiting for the cashiers to open they noticed that the store employees were looking at them in a manner that made them feel uncomfortable. Plaintiffs were the only black people in the store.

5. When a cashier opened they placed a cart-full of items (approximately $300 worth in purchases) through the check-out for payment. They paid for the items and were given a receipt and they proceeded to leave the store with their purchases believing the cashier had processed all the merchandise they intended to purchase. (It was later discovered that a pair of items had not been

rung-up by the cashier).

6. As they were exiting the store they were surrounded by several police officers with weapons drawn, patrol cars' lights shining on them and officers yelling at them to stop, put their arms up and get down to the ground.

7. Plaintiffs had no idea what was going on. They were in shock and in fear for their lives. They complied with the police officers' commands and they kneeled down first and then laid down with their faces to the pavement, legs and arms spread out. They were handcuffed, questioned and searched.

8. The police officers informed plaintiffs that they had been sent to Wal-Mart pursuant to a 911 call from Wal-Mart reporting three suspicious black males, one of them possibly armed with a gun. Wal-Mart employees had given every indication that plaintiffs were robbers casing the store. The police determined plaintiffs were not robbers and that nobody had a gun and that they had paid for their purchases; plaintiffs were told they could go.

9. As plaintiff's were about to leave a Wal-Mart employee accused plaintiffs of not paying for two items of the several items they had purchased. The police held plaintiffs until this matter was cleared. Plaintiffs asserted their belief that they had paid for everything. When the sales receipt did not list those two items, plaintiffs paid for them and only then were they allowed to leave. They had been detained for almost an hour.

10. At all times relevant to this case Wal-Mart employees were acting on behalf of and in furtherance of Wal-Mart's interests and were discharging their duties in the normal course of their employment.

## CAUSES OF ACTION

For all the causes of action asserted herein plaintiffs reallege each and every paragraph set forth above and assert that they were harmed and suffered damages under each cause of action asserted.

A. Defendant Wal-Mart violated plaintiff's rights protected under applicable provisions of 42 U.S.C. §§ 1981 as amended by the Civil Rights Act of 1991.

B. Defendant Wal-Mart violated plaintiff's rights protected under applicable provisions of Minnesota Human Rights Act, Minnesota Statutes, Chapter 363.

C. Defendant Wal-Mart maliciously defamed plaintiffs by publishing to third parties, including the police and others, false statements about plaintiffs portraying them as suspected armed robbers and falsely accusing them of having committed the crime of shoplifting.

D. Defendant Wal-Mart's actions or failure to act caused plaintiffs to be imprisoned falsely.

E. Defendant Wal-Mart negligently inflicted emotional distress upon plaintiffs.

F. Defendant Wal-Mart intentionally inflicted emotional distress upon plaintiffs.

G. Defendant Wal-Mart was negligent in the hiring, supervision and training of its employees.

H. Defendant Wal-Mart was negligent causing plaintiff damages.

**WHEREFORE,** without hereby electing remedies, plaintiffs on their collective behalf and each of them respectfully demand the following relief:

1. Judgment against the defendant for damages in excess of $50,000.00 for each and every count of this Complaint.

2. For attorney fees and costs in a reasonable amount.

3. For such other relief as the Court deems just and equitable.

**NOTICE OF INTENT TO CLAIM PUNITIVE DAMAGES**

Plaintiff hereby serves notice of his intent to move the Court to amend his complaint to assert a claim for punitive damages pursuant to Minnesota Statutes Section 549.20.

**JURY TRIAL DEMAND**

Plaintiff demands a trial by jury of all issues properly triable thereto.

Dated: 10/2/01

Aldo J. Terrazas, Lic. #190524
Attorney for Plaintiff
701 4th Avenue South, Suite 500
Minneapolis, MN 55415
(612) 321-0550

**ACKNOWLEDGMENT**

The undersigned hereby acknowledges that costs, disbursements and reasonable attorney fees may be awarded pursuant to Minn. Stat. Sec. 549.211, Subd. 2, to the party against whom the allegations in this pleading are asserted.

Aldo J. Terrazas

# EXHIBIT C

# Three black shoppers sue Wal-Mart after they're mistaken for robbers

By Pam Louwagie
*Star Tribune Staff Writer*

Three black men sued Wal-Mart in U.S. District Court on Wednesday, claiming that employees in a Fridley store unfairly called police on them and suggested that they were casing the store for a robbery.

The suit, filed in Minneapolis, says the three Hennepin County men were shopping at the 24-hour Wal-Mart store at about 1 a.m. on March 27, 2000. When they left, the suit says, police handcuffed them, told them to lie on the pavement and searched them. Police found no gun, as employees had suspected, and no evidence of a planned robbery, court papers say.

According to the suit:

Marshall Nelson, 23; Lamar Phillips, 20, and Ronald Garrison, 24, were the only black people in the store at 8450 University Av. NE.

The store announced that the cashier lanes would temporarily close. As they waited for a lane to open, they noticed that employees were "looking at them in a manner that made them feel uncomfortable."

After they bought about $300 in merchandise and walked out, police surrounded them, weapons drawn.

The men "had no idea what was going on," the complaint said. "They were in shock and in fear for their lives."

Police told the men that they went to the store after a 911 call reported three suspicious black males, one of them possibly armed, the court papers said.

"Wal-Mart employees had given every indication that plaintiffs were robbers casing the store," the complaint alleges.

Police determined that they were not robbers and told them they could go.

As they were about to leave, an employee accused them of not paying for two items. The men said they thought they had paid for everything, but when the sales receipt did not list two items, they paid for them and left.

They are accusing Wal-Mart of violating their civil rights, of defamation and of false imprisonment, among other things.

Their attorney, Aldo J. Terrazas, said that they complained to Wal-Mart soon afterward but that it "fell on deaf ears." They also complained to the state Department of Human Rights, he said.

A Wal-Mart spokesman, Bill Wertz, said he couldn't reach store officials who would know about the suit. But he said Wal-Mart "has very strong and frequently articulated policies against discrimination. Our employees are taught from the beginning about our principle of respect for the individual."

*— Pam Louwagie is at plouwagie@startribune.com.*

Star Tribune, October 4, 2001

# EXHIBIT D

**KSTP-TV (KSTC-45) 9:00 p.m. NEWSCAST AIRED OCTOBER 5, 2001**

[Male and female newscasters, "Wal-Mart Lawsuit" on the background.]

**MALE NEWSCASTER:**

Three black men from the Twin Cities have filed a lawsuit against Wal-Mart accusing the store of racial profiling.

**FEMALE NEWSCASTER:**

This stems from and incident in March of last year. The men went shopping at a 24 hour Wal-Mart store in Fridley on University Ave. around 1 o'clock in the morning. It's what happened when they walked out of the store that's landed the whole shopping trip in court.

**PLAINTIFF #1:**

...back up and we pay for our stuff, we go outside and they make us get on the ground.

**PLAINTIFF #2:**

...as soon as we exit, police everywhere.

**PLAINTIFF #3:**

...and then I seen two come out the dark and I'm like whoa! and they got guns drawn and they are yelling and I'm like hold on . . . (nervous laughter) everybody be still just lay everything down. I didn't want to get shot.

**FEMALE NEWSCASTER:**

Wal-Mart's manager had called the police and said the men were casing the store for a robbery and one may have a gun. Well there was no gun. The men say they had no bad intentions.

**PLAINTIFF #3:**

Who shops before they rob a store? What kind of sense does that make?

**PLAINTIFF #2:**

...three men want to go shopping at 1 in the morning, is something wrong with that?

**FEMALE NEWSCASTER:**

Wal-Mart's spokesperson says the men's behavior was suspicious.

**ATTORNEY BILL WERTZ, WAL-MART'S SPOKESPERSON (ON THE PHONE):**

These three individuals were following around our cashiers at 1 o'clock in the morning at a time when they were transferring money from the registers to our collection point. It had absolutely nothing to do with their race and exactly the same action would have been taken if they had been white or any other race.

**FEMALE NEWSCASTER:**

The men say there was an overhead announcement that the registers would close to change the cash drawers so they waited to pay for their three hundred dollars worth of purchases.

**PLAINTIFFS' ATTORNEY:**

The racism ignited in their [Wal-Mart's] minds the thought that they [plaintiffs] were trying to do something bad and something wrong, that they looked scary and they even fabricated in their own minds that one of them had a gun.

**PLAINTIFF #3:**

I think that we should get an apology and ain't nobody apologized... 'Oh I'm sorry that this happened' or nothing.

**FEMALE NEWSCASTER:**

By the way, somehow two items the men had did not get rung up. They say it was not stealing, it was a mistake by the clerk. Now it's still not clear why that happened and it is not what prompted the call to police-- that happened well before they got through the checkout line.

Wal-Mart's spokesperson told me the company will fight this lawsuit.

**END.**